J-A18030-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF W.J.T. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.N.T., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 424 WDA 2020 |

Appeal from the Order Entered February 18, 2020
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2019-947 IVT

| | | |
|---|---|---|
| IN RE: ADOPTION OF C.L.Y. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.N.T., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 425 WDA 2020 |

Appeal from the Order Entered February 18, 2020
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2019-948 IVT

| | | |
|---|---|---|
| IN RE: ADOPTION OF E.H.T. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.N.T., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 426 WDA 2020 |

Appeal from the Order Entered February 18, 2020
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2019-949 IVT

IN RE: ADOPTION OF A.J.F.     :    IN THE SUPERIOR COURT OF
                                         :               PENNSYLVANIA
                                         :

APPEAL OF: A.N.T., NATURAL      :
MOTHER                             :
                                         :
                                       :
                                       :
                                       :    No. 427 WDA 2020

Appeal from the Order Entered February 18, 2020
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s): 2019-950 IVT

IN RE: ADOPTION OF A.A.F.     :    IN THE SUPERIOR COURT OF
                                         :               PENNSYLVANIA
                                         :

APPEAL OF: A.N.T., NATURAL      :
MOTHER                             :
                                         :
                                         :
                                         :
                                       :    No. 428 WDA 2020

Appeal from the Order Entered February 18, 2020
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s): 2019-951 IVT

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                     FILED AUGUST 3, 2020

A.N.T. ("Mother") appeals from the February 18, 2020 Order involuntarily terminating her parental rights to her five children: W.J.T., born in February 2012; C.L.Y., born in March of 2013; E.H.T., born in May 2014; A.J.F., Jr. ("A.J.F."), born in December 2015; and A.A.F., born in September 2016 (collectively, the "Children"), pursuant to 23 Pa.C.S. § 2511(a)(1), (2),

(5), and (b).  Because the record supports the decision of the orphans' court, we affirm the Order.[1]

SUMMARY OF FACTS AND PROCEDURAL HISTORY

We glean the following factual and procedural history from the trial court's opinion and the certified record. Children and Youth Services ("CYS") became involved with the family in August 2016 due to concerns regarding domestic violence, safety, finances, and deplorable housing conditions, and, as a result, instituted numerous services for the family.  On November 8, 2017, CYS filed a dependency petition raising concerns regarding Mother's mental health, substance abuse, inappropriate supervision, lack of parenting skills, lack of appropriate discipline, as well as the safety of the home.  The court held a hearing on November 29, 2017, and on December 12, 2017, entered an order adjudicating the Children dependent.  The court directed that the Children remain in the legal and physical custody of Mother under the supervision of CYS and with the continued provision of services.  See Orders of Adjudication and Disposition – Child Dependent, 12/12/17, at 1.  In relevant part, the court specifically ordered Mother to (1) refrain from using illegal drugs or alcohol; (2) partake in random drug screen; (3) participate in parenting classes; (4) ensure the Children were supervised by a responsible

_____

[1] By the same order, the orphans' court also involuntarily terminated the parental rights of the Children's fathers. None of the Children's fathers are parties to the instant appeals.  The eldest child's father is deceased.

- 3 -

adult, who would also be subject to random drug tests; and (5) maintain a "clean, safe, and adequately furnished home." Orders of Adjudication and Disposition at 2 (unpaginated). The court also directed that Mother to undergo a psychological evaluation.[2] Id.

Over the next two years, the court held regular permanency review hearings. See Petitioner's Exhibit 14. After each hearing, the court found Mother to be minimally compliant as she had failed to participate consistently in mental health, drug and alcohol, and parenting education services, and had failed to secure employment and obtain stable housing. See N.T., 1/31/20, at 25-27.

On May 16, 2018, CYS removed the Children from Mother's care due to Mother's continued use of drugs and alcohol, continuing problems of domestic violence, transiency, finances, lack of supervision, and poor parenting.[3] Id. at 20; Petitioner's Exhibit 14, Permanency Review Orders (Non-Placement), 6/1/18. On July 17, 2019, the court changed the Children's goal from Reunification to Adoption. Id. at 27; Petitioner's Exhibit 14, Permanency Review Orders, 7/19/19.

_____

[2] Psychologist Dennis Kashurba evaluated Mother on November 16, 2016, and on April 5, 2019. See Petitioner's Exhibit 18 (evaluations).

[3] When first removed from Mother's care, the Children had significant developmental, emotional, and educational delays in addition to behavioral problems, which necessitated that they be split up between three different foster homes. At the time of the termination hearing, the Children were living together in one pre-adoptive foster home.

On September 24, 2019, Cambria County Children and Youth Services ("CYS") filed petitions to involuntarily terminate Mother's and the Children's fathers' parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5),[4] and (b).

On January 31, 2020, the orphans' court conducted a hearing on the termination petitions at which CYS presented the testimony of Molly Smithmyer, CYS caseworker; Dennis Kashurba, a licensed psychologist; Jeffrey Grove, of the Bair Foundation's Path to Permanency Program; and Kathy Skaife, home and family instructor with the Home Management Program at Independent Family Services ("IFS"). CYS also proffered Petitioner's Exhibits 1 through 20 pertaining to the dependency proceedings, which the orphans' court admitted without objection. Mother attended the hearing with legal representation. Additionally, the Children were represented by counsel.[5]

On February 18, 2020, the orphans' court entered an Order involuntarily terminating the parental rights of Mother, as well as those of C.L.Y., E.H.T., A.J.F., and A.A.F.'s fathers, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and

_____

[4] CYS amended the Petition at the time of hearing to include an alleged violation of 23 Pa.C.S. Section 2511(a)(8). N.T., 1/31/20, at 4-5; Order, 2/5/20.

[5] The court appointed Children's guardian ad litem Suzann M. Lehmier, Esq., to represent the Children's legal interests. Attorney. Lehmier informed the court at the beginning of the termination hearing that she had met with the Children, who ranged in age from 3 to 7 years old, individually, and determined that there was no conflict in her representing the Children's legal and best interests. N.T., 1/31/20, at 4. Attorney Lehmier submitted a brief to this Court in favor of the termination of Mother's parental rights.

(b). Mother timely filed Notices of Appeal and Concise Statements of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), contending the orphans' court erred in involuntarily terminating her parental rights pursuant to 23 Pa.C.S. § 2511(a) and (b). In compliance with Pa.R.A.P. 1925(a), pursuant to Order dated March 16, 2020, and entered March 18, 2020, the orphans' court noted its reliance on its Order of February 18, 2020. Mother's appeals were consolidated by this Court, sua sponte, on April 16, 2020.

ISSUES ON APPEAL

Mother raises the following issue on appeal:

Whether the Petitioner had met its burden to substantiate the termination of [Mother]'s parental right to her children by clear and convincing evidence?

Mother's Brief at 4 (suggested answer omitted).

LEGAL ANALYSIS

In reviewing cases in which the orphans' court involuntarily terminated parental rights, appellate courts must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. In re T.S.M., 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the orphans' court made an error of law or abused its discretion. Id. Where the competent record evidence supports the court's findings, we must affirm the orphans' court's order even though the record could support an opposite result. In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." In re M.G., 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). Appellate courts defer to the orphans' court that often has "first-hand observations of the parties spanning multiple hearings." In re T.S.M., supra at 267 (citations and quotation marks omitted2004).

While the orphans' court here found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b), we need only agree with its decision as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

TERMINATION PURSUANT TO SECTION 2511(a)(2)

We first conclude that the orphans' court properly exercised its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); In re Adoption of S.P., 47 A.3d 817, 827 (Pa. 2012) (citations omitted). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not

limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. Id. At a termination hearing, the orphans' court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to cooperate with the CYS agency or take advantage of available services during dependency proceedings. Id. at 340. Importantly, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006).

In the instant case, the orphans' court found that CYS had presented sufficient proof to support the termination of Mother's parental rights based on Section 2511(a)(2).

> All five children have spent most of their lives being dependent in the child welfare system. Unfortunately, all of the children have been exposed to a significant amount of trauma in their young lives. [Mother] has been provided with all of the services the agency had to offer throughout the four years of involvement. While I am sure [Mother] loves her children, she has not been able to rectify any of the reasons that led to the [C]hildren's removal, and I don't believe she will in the near future. . . . It is in the best interests of [the Children] for the parental rights of their parents

to be terminated so that the [C]hildren will be afforded the opportunity to find permanency through adoption and be able to reside with a family who will keep them safe and help them reach their fullest potential.

Order, 2/18/20, at 7 (quoting Petitioner's Exh. 17).

The record supports this finding. CYS caseworker, Molly Smithmyer, testified that, despite attending visits and maintaining employment, Mother never addressed concerns of mental health, drugs and alcohol, and transiency and, thus, had not done anything to demonstrate her ability to reunify with the Children or establish that the issues that caused the Children's removal could be remedied in a reasonable amount of time, if at all. See N.T., 1/3/2020 at 28, 49, 52. Kathy Skaife, IFS, Home Management Program, home and family instructor, testified that Mother had been essentially homeless since January 2019 and could not provide for the safety and well-being of the Children on her own. Id. at 29, 104.

Similarly, Jeffrey Grove, Bair Foundation, Path to Permanency Program, who observed and supervised visitation and conducted active parenting assistance, noted that Mother had not remedied those issues of concern to allow for reunification. He expressed concerns regarding Mother's parenting and stated that Mother was not able to independently parent the Children. Id. at 90-92.

Psychologist Dennis Kashurba, who conducted evaluations of Mother in November 2016 and April 2019, testified that Mother had "barely adequate intellectual ability to learn appropriate parenting strategies for addressing the

behavioral challenges of her children" and will likely require "intensive services in the parenting domain for the foreseeable future." Id. at 78, 82. As a result, he expressed his belief that Mother cannot parent the Children. Id. at 83. Mr. Kashurba further opined that Mother's likelihood for successful reunification with the Children is "guarded to poor," stating, "[t]o my estimation, there's not been the type of progress that would justify further reunification efforts." Id. at 83-84.

Mother argues that, prior to the filing of the petitions for termination, she had remedied CYS's concerns, including housing, employment, drugs and alcohol, domestic violence, and mental health, in total or had made significant progress such that termination was not warranted. Mother's Brief at 11-16. The record, as noted above, belies these averments.

In sum, for three and a half years before CYS filed the Petition to Involuntarily Terminate Mother's Parental Rights, CYS provided numerous services to Mother to help her acquire basic needs and skills to reunify with the Children with minimal progress shown on Mother's part. At the time of the termination hearing, the Children had been in foster care for over a year and a half. N.T., 1/31/20, at 18-20. Having reviewed the record, we conclude that it supports the findings of the orphans' court that Mother has not provided Children with the essential parental care, control and subsistence necessary for their mental and physical well-being, and that Mother is unable to remedy

the causes of her parental incapacity, neglect or refusal any time in the foreseeable future. Thus, Mother is not entitled to relief.[6]

Orders affirmed.

President Judge Emeritus Bender joins this memorandum.

Judge Nichols notes dissent.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/3/2020

_____

[6] Mother failed to challenge the trial court's conclusion that CYS met its burden pursuant to Section 2511(b) and, thus, Mother has waived any challenge to the trial court's findings. Even if she had not waived the issue, however, we would find it meritless as our review indicates that the record supports the orphans' court's conclusion that it is in the best interests of the Children to terminate Mother's parental rights.